## THE PEOPLE *v.* ANDREW J. NICHOLS.

Thirty-four tons of pig iron, in bars, each weighing about one hundred pounds, were intrusted to a common carrier, to transport on the canal from Albany to Buffalo. On the passage, the carrier stopped his boat in the night, and, with the assistance of one of his hands, and with a felonious intent, put off from the boat one hundred bars of the iron, and then proceeded and delivered the remainder of the iron at Buffalo; held, that the facts did not constitute larceny at common law, but that the carrier was guilty of embezzlement, under 2 *Revised Statutes* (*p.* 679, § 62).

Held, also, that a trial and acquittal for larceny, on these facts, was no bar to a subsequent conviction for embezzlement on the same facts.

THE defendant was indicted in November, 1856, for the larceny of pig iron. He was tried in the Oyer and Terminer, in December, 1856, and acquitted. He was immediately indicted for embezzling and converting to his own use, without the consent of the owner, certain pig iron. Also a count

(*a*) 2 Kings, ch. iv., v. 19.

for secreting and making way with, with intent then and there to embezzle and convert to his own use, the said personal property. The counts in this indictment allege the delivery of the iron to the defendant, as a carrier, to be carried from Albany to Buffalo for hire.

The defendant plead: First. Not guilty; Second. The previous acquittal of the offence charged; Third. The previous acquittal, setting forth the previous indictment, and asserting that the acts and offences charged in the two indictments were the same, and that the same evidence which would support the one would support the other. The people took issue upon the second plea, viz., that the offences charged were the same. To the third plea, the people demurred, and the defendant joined in the demurrer. The court overruled the demurrer, and the issues were tried, and the defendant was convicted.

From the bill of exceptions it appears that George W. Brown contracted with the defendant for the transportation of a boat load of iron from Albany to Buffalo, at the compensation of nine shillings a ton. About thirty-four tons of pig iron, in bars, each weighing about one hundred pounds, were put upon the boat at Albany. On the passage, the defendant stopped his boat, and, in the night of the 10th of November, 1856, with the assistance of one of his boatmen, put off from the boat about one hundred bars of the iron, being about five tons. The remainder of the iron was taken by the defendant to Buffalo, and there properly delivered. Evidence was given tending to show that the taking was with a felonious intent. The counsel for the defendant moved he be discharged, on the ground that the offence proved was larceny, and not embezzlement, as charged in the indictment. The motion was denied, and the prisoner excepted. The court charged that the crime was embezzlement, if the jury believed the witnesses, and the prisoner excepted. The court refused to charge, as requested, that

the evidence did not establish the crime of embezzlement, and the prisoner excepted. The verdict was "guilty."

*William Dorsheimer* and *Benjamin Austin*, for the prisoner.

*A. Sawin* (District Attorney), for the people.

*By the Court*, MARVIN, J.—If, from the evidence upon the trial, a jury would have been authorized to convict the prisoner of larceny, the conviction upon the present indictment is erroneous. In other words, if the prisoner could have been convicted upon the first trial, his acquittal upon that trial was a good bar to the second indictment. The question then is, do the facts show a larceny or embezzlement? Larceny is defined to be the felonious taking and carrying away of the personal goods of another (4 *Bl. Com.*, 229), or the wrongful and fraudulent taking and carrying away, by one person, of the mere personal goods of another, from any place, with a felonious intent to convert them to the taker's own use, and make them his own property, without the consent of the owner. (2 *East's P. C.*, 553; 2 *Russ. on Cr.*, 2.)

From these definitions it is seen that there must be a taking, and this implies that the consent of the owner of the goods is wanting. If the owner of the goods deliver them to the offender upon any trust, a violation of the trust will not afford any ground of a larceny. It was early established as law that if a man deliver goods to a carrier to convey to a certain place and he carry them away it is no felony (larceny). (*East Pl. C.*, ch. 16, § 115.) It was also established at an early day that if the carrier have a bale or trunk delivered to him, and he break the bale or trunk and carry away the goods with the intent to steal them, he will be guilty of larceny.

This distinction proceeded upon the ground that by breaking the package, bale or trunk, the delivery of the owner

and the trust ceased, and the taking of the goods from the violated package, &c., was, if felonious, a taking within the definition of the crime of larceny. Many cases have been decided upon this distinction, and with little difficulty. (1 *Hale Pl. C.*, 504, 505; *Rosc. Cr. Ev.*, 598; *Russ. on Cr.*, 56, *et seq.*) A few cases have arisen, however, in which there have been difficulties in determining the precise character of the offence, under the distinction above stated. We have been referred to some of them. The prisoner's counsel rely very much upon the case of *Rex* v. *Howard*, 7 *C. & P.*, 325.) The prisoner was employed to carry staves ashore in his boat. The prisoner never landed two of the staves. He concealed them in the bottom of his boat under some nets. " One of the staves which he landed he carried to his mother's house." He was indicted for stealing three staves. Justice Paterson decided that the prisoner was a bailee of the staves. That point having been made, he then says: " If the prisoner had not taken the staves out of the boat, the mere non-delivery of them would not have amounted to larceny; but the prisoner's separating one of the articles from the rest, and taking it to a place different from that of its destination, was, if he did it with intent to appropriate it to his own use, equivalent to breaking bulk; and therefore, would be sufficient to constitute a larceny. I shall leave it to the jury to say whether the prisoner removed the stave to his mother's with intent to convert it to his own use." The case is briefly reported, but it shows clearly that the prisoner was indicted for stealing staves; two of them he never landed, but he concealed them in the bottom of his boat under some nets. One of the staves which he landed he carried to his mother's house. The judge did not submit to the jury the question touching the two staves which the prisoner did not land, but concealed in the bottom of the boat, and why not? Because he held that the non-delivery, though the prisoner had secreted them did not amount to larceny; that is, there had been no felo-

The People *v.* Nichols.

nious taking within the definition of larceny, the staves having been intrusted to the prisoner as a bailee to carry them "ashore in his boat." But as the case shows, the prisoner landed one of the staves and carried it to his mother's house, and he left it to the jury to say whether the prisoner removed the stave to his mother's with intent to convert it to his own use. Upon landing the staves the bailment was at an end, and any taking after that would, within all the cases, be a sufficient taking to constitute larceny. The judge talks about separating one of the articles from the rest, and taking it to a place different from that of its destination, if done with intent to appropriate it to the prisoner's own use, being equivalent to breaking bulk. He does not speak of breaking packages, bales or trunks, but as equivalent to breaking bulk.

But in fact, as I understand the case, those remarks of the judge were not called for. If the prisoner had landed the stave, and then took it to his mother's with intent to convert it to his own use, he was guilty; and the only question submitted to the jury was, whether the prisoner removed the stave to his mother's with such intent. That such is the proper construction of this case, see *Rex* v. *Fletcher and others* (4 *C. & P.*, 545), tried by the same judge. The goods were delivered to the prisoner to be carried to a certain house. They were not carried to such house, but were found at the house of a third person, having been taken out of the packages in which they had been packed by the prosecutor: Paterson, J., said, There is no evidence that the packages were opened while in possession of the prisoners, and a carrier cannot be guilty of larceny unless he breaks bulk, and referred to *Rex* v. *Madox*. The case was this: the prisoner received two hundred and eighty casks of butter to carry in his ship; on the passage he disposed of thirteen casks, and upon a case reserved, the court held that there was no larceny. The question turned upon the taking; and it was held that there was no breaking of a

package, bale or box, or breaking of bulk. (*Russ. & Ry.*, 92; 2 *Russ. on Cr.*, 60.) This case is in point. The bars of pig iron were as separate and disconnected from each other as were the different casks of butter. A cask of butter was a package by itself, and so was a bar of pig iron weighing one hundred pounds. In other words, the bars of iron did not constitute a package or bale, and the breaking of one bar of iron from the other bars was not the breaking of a package, bale or bulk. In *Rex* v. *Peatley* (5 *C. & P.*, 533), three trusses of hay were intrusted to the prisoner to carry. The prisoner took one of the trusses away, and it was found in his possession not broken up. Justice Parker held it no larceny, as the prisoner did not break up the truss. These cases show that the taking by a carrier of one package entire, from other packages, is not a taking within the definition of larceny, unless the package taken be broken, and this rule was applied to trusses of hay and to casks of butter. In my opinion, the bars of pig iron in this case were as separate and distinct from each other as were the casks of butter or the trusses of hay. I am therefore of the opinion, that the prisoner could not have been convicted for larceny under the first indictment. He was properly convicted under the second indictment, which was drawn under the 2 *Revised Statutes* (*p.* 679, § 62), which relates to the taking, embezzling or converting, &c., to their use, by carriers, or other persons, the goods of others delivered to them to carry for hire. The punishment is to be the same as if the prisoner had taken, embezzled, converted or secreted such goods or other personal property after breaking the trunk, box, bale or other thing containing the same, or after separating any of them from the other. Our attention was called by the counsel for the prisoner, to the last clause of this section, "or after separating any of them from the other;" and it was suggested that this language showed that there were cases of larceny of goods after separating some of them from others. There is no attempt by the

statute to change the common law of larceny, and we must go to the common law to ascertain what constitutes larceny; and we have no difficulty in applying this language of the statute, without holding that the taking by a carrier of a cask of butter from other casks, or a truss of hay from other trusses, or a bar of pig iron from other bars, is a larceny. Besides, the object of the section is broader than the argument supposes. It relates to carriers, and their punishment is to be the sames as if they had taken, embezzled, converted or secreted such goods. On turning to the revisors' notes to this section, it will be seen that they stated the common law as to the taking, and the effect of it upon carriers, and they declare their object to be to "place carriers precisely on the same footing with servants," which they "conceive is their true legal character."

The prisoner was properly convicted, and the conviction should be affirmed.